UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON MCBURNIE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ACCEPTANCE NOW, LLC, <br><br> Defendant. | Case No. 3:21-cv-01429-JD <br><br> **ORDER RE ARBITRATION** |

Plaintiffs Shannon McBurnie and April Spruell, suing on behalf of themselves and a putative class, allege that defendant RAC Acceptance East, LLC ("RAC")[1] charged excessive fees in connection with its rent-to-own business, in violation of California's Karnette Rental-Purchase Act, Cal. Civ. Code § 1812.620 *et seq.* ("Karnette Act"), Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). Dkt. No. 1-1.

RAC asks for an order compelling McBurnie and Spruell to individual arbitration pursuant to the parties' arbitration agreements and the Federal Arbitration Act ("FAA"). Dkt. No. 67. Arbitration is denied.

**BACKGROUND**

The salient facts are undisputed. Plaintiffs bought furniture from a retail store, which they "financed" by agreeing to pay RAC over time. Dkt. No. 1-1 ¶¶ 17-25. They could take the furniture home that day, but would own it only after making an agreed-upon number of payments to RAC. *Id.* ¶ 11. As part of this arrangement, named plaintiffs paid RAC a "processing fee" of

---

[1] RAC says that it was erroneously sued as Acceptance Now, LLC: "'Acceptance Now' is a name under which RAC Acceptance East, LLC does business," but "Acceptance Now, LLC does not exist." Dkt. No. 1-3 at ECF 3 & n.1.

$45.00 and agreed to pay RAC an "expedited payment fee" of $1.99 for each payment made by telephone. *Id.* ¶¶ 20, 23-25.

Plaintiffs' contracts with RAC contained an arbitration agreement, which is the same for each plaintiff and states that "in the event of any dispute or claim between us, either you or RAC may elect to have that dispute or claim resolved by binding arbitration." *Id.* at ECF 24, 30. The agreement provides that plaintiffs and RAC will conduct arbitration only on an individual basis, and they cannot "seek, nor may the Arbitrator award, relief that would affect [other] RAC account holders." *Id.* at ECF 25, 31.

Plaintiffs originally sued in the Alameda County Superior Court in December 2020. Dkt. No. 1-1. They alleged that RAC's processing and expedited payment fees were unreasonable and violated the Karnette Act and other California laws. *Id.* ¶¶ 1-4. RAC answered the complaint in state court, and identified the arbitration agreement as an affirmative defense. Dkt. No. 1-3 ¶ 1. Even so, RAC did not seek to compel arbitration. In February 2021, RAC filed a notice of removal of the case to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Dkt. No. 1. Plaintiffs did not contest removal.

After removal, the parties participated in a case management conference in June 2021. Dkt. No. 18. They entered a stipulated protective order, which the Court approved, Dkt. No. 23. On several occasions the parties stipulated to extend case deadlines, Dkt. Nos. 24, 34, 41, 47, each time representing that they were actively working to move the litigation forward. *See, e.g.*, Dkt. No. 34 at 2 ("The parties agree that in order to complete the necessary discovery for this case, including the required meet-and-confer process for outstanding discovery, . . . scheduling and taking necessary depositions, and conducting further discovery and document production, a 90-day continuance of all scheduling deadlines is appropriate."). None of these requests raised the prospect of arbitration.

The parties stayed busy with litigation. They actively engaged in discovery and participated in settlement discussions. *See, e.g.*, Dkt. No. 34 at 1-2; Dkt. No. 71 ¶¶ 4-5; Dkt. No. 78-1 ¶ 5. On the discovery front, plaintiffs represent, without objection by RAC, that RAC deposed both named plaintiffs, made six sets of requests for the production of documents and

2

three sets of requests for admissions, and propounded five sets of interrogatories. Dkt. No. 78 at 3. The parties brought several discovery disputes to the Court, Dkt. Nos. 51, 54, 56, 62, 63, 64, and were twice directed to meet and confer for four hours to resolve their issues, Dkt. Nos. 59, 66. On the settlement side, the parties participated in a number of pre-settlement conferences with a magistrate judge in this District. Dkt. Nos. 25, 30, 32, 37, 40, 46. They have also engaged in private mediation. Dkt. No. 34 at 1-2.

In July 2022, over eighteen months after plaintiffs filed suit in state court, RAC filed a motion to stay discovery in anticipation of seeking to compel arbitration, Dkt. No. 58, which the Court denied without prejudice to renewal if a motion to compel was filed, Dkt. No. 66. RAC did not file a motion to compel arbitration until August 2022. Dkt. No. 67. Its renewed motion to stay discovery, Dkt. No. 70, was denied after the arbitration briefing was completed, Dkt. No. 85.

## DISCUSSION

### A.    Legal Standards

The arbitration demand is governed by the FAA. The Court has discussed the governing standards in prior orders, which are incorporated here. *See Louis v. Healthsource Glob. Staffing, Inc.*, No. 22-cv-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019). In pertinent part, the FAA's "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Under Section 4 of the FAA, the Court's role "is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the party seeking to compel arbitration establishes both factors, the district court "must order the parties to proceed to arbitration only in accordance with the terms of their agreement." *Id.* "Any doubts about the scope of arbitrable issues should be decided in favor of arbitration." *Williams*, 417 F. Supp. 3d at 1239; *see also Louis*, 2022 WL 4960666, at *2.

Like other contractual rights, the right to arbitration can be waived. *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Waiver of an arbitration agreement governed by the FAA is

3

evaluated under federal rather than state law. *See Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002); *see also Abary v. BMW of N. Am., LLC*, No. 19-cv-00087-JD, 2020 WL 5798377, at *1 (N.D. Cal. Sept. 29, 2020). A "party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration [and] (2) acts inconsistent with that existing right." *Martin*, 829 F.3d at 1124 (cleaned up). While the Ninth Circuit's waiver rule in the arbitration context previously included a prejudice requirement, that has been abrogated by *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). "[T]he usual federal rule of waiver does not include a prejudice requirement." *Morgan*, 142 S. Ct. at 1714. Because the FAA "does not authorize federal courts to invent special, arbitration-preferring procedural rules," *id.* at 1713, the Supreme Court held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to . . . compel arbitration under the FAA," *id.* at 1714.

### B. Waiver

Plaintiffs' main objection is that RAC has waived a right to demand arbitration by actively litigating this case in court for over eighteen months before filing a motion to compel. Dkt. No. 78 at 5-10. Although RAC's arbitration agreement has language indicating delegation of some arbitrability disputes to the arbitrator, Dkt. No. 1-1 at ECF 25, it did not expressly delegate the question of waiver, and the Court will decide the issue based on federal law. *See Martin*, 829 F.3d at 1124 ("We have made clear that courts generally decide whether a party has waived [its] right to arbitration by litigation conduct."); *see also Anderson v. Starbucks Corp.*, No. 20-cv-01178-JD, 2022 WL 797014, at *3 (N.D. Cal. Mar. 16, 2022).

RAC is in no position to say that it was unaware of its own arbitration agreements with the named plaintiffs, which pre-dated the filing of the original complaint in state court. Consequently, the only question for waiver is whether RAC acted inconsistently with a right to arbitrate.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin*, 829 F.3d at 1125. The question of waiver turns on the "totality" of the actions by the party seeking to compel arbitration, including its "extended silence and delay in moving for arbitration," and its conduct in actively litigating a case in court. *Id.* at 1125-26.

The record amply demonstrates that RAC has waived arbitration by actively litigating this case in court for more than eighteen months. During this time, RAC engaged in substantive discovery. Plaintiffs represent that "the scope of discovery in which RAC has engaged far exceeds what its own arbitration agreement entitled it to obtain," Dkt. No. 78 at 8, and RAC does not argue otherwise. RAC also made considerable use of federal judicial resources in pre-settlement conferences before a magistrate judge. This is not a situation in which a defendant did the bare minimum in court while pressing a prompt demand for arbitration.

RAC's main defense is that it believed it could not compel arbitration until one of two things happened: (i) the publication of the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022); and (ii) the execution of a stipulated judgment between RAC's parent company and the California Attorney General in August 2022, which prohibits RAC from charging a processing fee that violates the Karnette Act. Dkt. No. 67 at 1-2; Dkt. No. 84 at 6-8. RAC believes the decision in *Viking River* was an essential predicate because it surmounted an opinion by the California Supreme Court in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), which in RAC's view precluded enforcement of the arbitration agreement here. Alternatively, RAC considers the settlement with the Attorney General to have cleared the way for its motion to compel because it mooted the named plaintiffs' claim for public injunctive relief, preventing the application of *McGill* and consequently permitting an arbitration demand. *See generally* Dkt. No. 67 at 6-15.

Neither point is well taken. To start, the Supreme Court docket indicates that the petition for certiorari in *Viking River* was filed on May 10, 2021, and certiorari was granted on December 15, 2021.[2] Even so, RAC never brought *Viking River* to the Court's attention as a possible basis for compelling arbitration until it filed the motion to stay discovery in July 2022. Dkt. No. 58 at 2-3. Nor did it request a stay of the case while *Viking River* was pending in the Supreme Court, as similarly situated parties did in other cases. *See, e.g.*, *Harper v. Charter Commc'ns, LLC*, No.

---

[2] The Supreme Court docket for *Viking River Cruises, Inc. v. Moriana*, No. 20-1573, is available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-1573.html.

5

2:19-cv-00902-WBS, 2022 WL 229861, at *1 (E.D. Cal. Jan. 26, 2022) (granting defendant's motion for a stay pending the resolution of *Viking River*).

The same is true for the Attorney General settlement. Documents submitted by RAC say that the settlement was the end result of a "multi-year investigation" into its business practices. Dkt. No. 69-1 at ECF 2-3.[3] But RAC again never mentioned these proceedings until the arbitration demand in August 2022, or asked for stay or other accommodation for them here.

Instead, RAC blazed ahead with discovery and settlement proceedings as though arbitration would never be a possibility in this case. This is not consonant with preserving a right to arbitration. It waited for eighteen months before moving to compel, despite knowing of the arbitration clauses in its own contracts with the named plaintiffs, and never mentioned *Viking River* or the settlement. It may be, as RAC suggests, that it sprinkled a few references to arbitration in some docket filings, but such placeholder "statement[s] by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Martin*, 829 F.3d at 1125 (citing *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 923 (8th Cir. 2009) ("A reservation of rights is not an assertion of rights.")). While prejudice is no longer a required element of waiver, it bears noting that "[s]pending a lengthy amount of time litigating in the more complex federal court system with its rigorous procedural and substantive rules will almost inevitably cause the parties to expend more time, money, and effort than had they proceeded directly to arbitration." *Id.* at 1127. This is true "even if the parties exchanged the same information in court as they would have in arbitration" because "the process of doing so in federal court likely cost far more" than in arbitration. *Id.* at 1128.

There are additional reasons why RAC's argument against waiver is not tenable. The suggestion that *Viking River* effected a sea change in the enforceability of the arbitration agreement is questionable at best. RAC contends that its hands were tied up to *Viking River* because the arbitration agreement with the named plaintiffs precluded a request for "public

---

[3] RAC's request for judicial notice, Dkt. No. 69, which plaintiffs did not oppose, is granted. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").

6

injunctive relief" in any forum, which *McGill* held to be unenforceable as contrary to public policy. *McGill*, 2 Cal. 5th at 961. The Ninth Circuit concluded that the *McGill* rule was not preempted by the FAA. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 830-31 (9th Cir. 2019). The arbitration provisions here are materially the same as those in *Blair*, which involved RAC's parent company. *See* Dkt. No. 1-1 at ECF 24-34; *Blair*, 928 F.3d at 831; *see also* Dkt. No. 78 at 11.

RAC correctly says that *Blair* would sink a bid for arbitration here, but its notion that *Viking River* somehow saved the day is misplaced. *Viking River* did not reverse or otherwise abrogate *Blair* or *McGill*. *Viking River* addressed the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.* Under PAGA, an employee that suffers a Labor Code violation can bring a claim in her individual capacity against an employer, and is "delegated authority to assert the State's claims [for code violations suffered by other employees] on a representative basis." *Viking River*, 142 S. Ct. at 1919. *Viking River* abrogated a different California rule that "invalidate[d] agreements to arbitrate only 'individual PAGA claims for Labor Code violations that an employee suffered,'" *id.* at 1923 (quoting *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 383 (2014)), because "[t]he only way for parties to agree to arbitrate *one* of an employee's PAGA claims [was] to also 'agree' to arbitrate *all other* PAGA claims in the same arbitral proceeding," *id.* at 1924. This rule "unduly circumscribe[d] the freedom of parties to determine the issues subject to arbitration." *Id.* at 1923 (internal quotation and citation omitted).

*McGill* did not involve PAGA or present the same ostensible dilemma. *McGill* says that a plaintiff is entitled to seek public injunctive relief in some forum, which means that the total waiver of a public injunction in the RAC arbitration agreement would be unenforceable. *Viking River* does not abrogate *McGill*, and is not "clearly irreconcilable" with *Blair*, which controls here. *See Masood v. Barr*, No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020).

RAC's suggestion that plaintiffs' request for a public injunction is moot is also misdirected.[4] The defendant typically "bears the burden to establish that a once-live case has

---

[4] RAC initially suggested that plaintiffs lacked standing to pursue injunctive relief because "RAC no longer charges the Processing Fee in California" and "has not done any business in California in over a year." Dkt. No. 67 at 11. Its reply brief concedes that this would not have mooted plaintiffs' claims for public injunctive relief. *See* Dkt. No. 84 at 5-6.

become moot." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022). RAC says that the injunction its parent agreed to with the Attorney General, which binds RAC as a subsidiary, prohibits RAC from "[c]harging or listing a processing fee or any other fee that [RAC] cannot establish as reasonable and an actual cost incurred by [RAC], as described in Civil Code section 1812.624, subdivision (a)(7)." Dkt. No. 69-1 ¶ 11(b). That may be, but that hardly bars all possible public injunctive relief available to plaintiffs. Based on the restitution made available to consumers under the settlement, it appears that the $45 processing fee at issue here was not the focus of the California Attorney General's investigation. Dkt. No. 69-1 ¶ 24. Plaintiffs, who claim injury from the processing fee, may seek public injunctive relief that is more concrete than merely reaffirming that RAC is required to abide by California law on rental-purchase agreements. Moreover, even if RAC has agreed not to commit further Karnette Act violations, plaintiffs have also sought public injunctive relief under the CLRA, alleging that RAC "insert[s] unconscionable provisions in their [rental-purchase agreements] with Plaintiffs, Class members, and other California consumers." Dkt. No. 1-1 ¶ 49. RAC does not say why this CLRA claim is moot. Because RAC has not shown that plaintiffs cannot obtain "any effectual [public injunctive] relief" in this case, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (internal quotation and citation omitted), plaintiffs' claims remain live, and the *McGill* rule applies to their arbitration agreements. Consequently, under *Blair*, the arbitration agreement's severance clause requires that each claim, in its entirety, "be severed for judicial determination." *Blair*, 928 F.3d at 832.

## CONCLUSION

The motion to compel arbitration is denied.

**IT IS SO ORDERED.**

Dated: November 30, 2022

_____
JAMES DONATO
United States District Judge