UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON MCBURNIE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ACCEPTANCE NOW, LLC, <br><br> Defendant. | Case No. 21-cv-01429-JD <br><br> **ORDER RE CLASS CERTIFICATION** |

Named plaintiffs Shannon McBurnie and April Spruell seek class certification for their claims against defendant RAC Acceptance East, LLC (RAC) under the California Karnette Rental-Purchase Act and related consumer protection statutes.[1]  Dkt. No. 97.  RAC leases durable goods such as furniture or appliances to consumers on a rent-to-own basis.  *See* Dkt. No. 105 at 3.  To rent the goods, all RAC customers must sign a Rental Purchase Agreement (RPA), which includes a $45.00 processing fee.  Plaintiffs challenge the imposition of the processing fee as unlawful under the Karnette Act, the Consumer Legal Remedies Act, and the Unfair Competition Law, and ask to pursue these claims on behalf of a class certified under Federal Rule of Civil Procedure 23(b)(3).

The parties' familiarity with the record is assumed, and certification is granted.

## DISCUSSION

Plaintiffs propose a class of "all individuals who entered into a Rental-Purchase Agreement with RAC in California at any time between December 11, 2016, and June 30, 2021

---

[1] RAC was erroneously sued by plaintiffs as Acceptance Now, LLC.  The parties agree that RAC Acceptance East, LLC is the correct legal entity for this lawsuit.  *See* Dkt. No. 97 at 1 (seeking certification against "defendant RAC Acceptance East, LLC"); *id*. at 6 (stating that "RAC conducted rent-to-own business operations during the class period under the tradename 'Acceptance Now.'").

and who were charged a Processing Fee." Dkt. No. 97, Motion at 1; Dkt. No. 140 at 3. Certification of this class is requested for all three of plaintiffs' claims: (1) violation of the Karnette Rental-Purchase Act (Karnette Act), Cal. Civ. Code §§ 1812.620 et seq.; (2) violation of the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750 et seq.; and (3) violation of the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq. Dkt. No. 1-1, Ex. A (Complaint) ¶¶ 39-55.

Some case developments that occurred after the close of the class certification briefing have simplified the Court's task. Earlier in the case, the Court denied RAC's motion to compel arbitration of plaintiffs' claims, Dkt. No. 90, and RAC appealed to the Ninth Circuit, Dkt. No. 91. Plaintiffs' certification motion was briefed while that appeal was pending, and RAC included in its opposition brief the argument that "class members' agreements to arbitrate preclude[] certification." Dkt. No. 105 at 19-20. The circuit affirmed the Court's denial of arbitration and the conclusion that "RAC's arbitration agreement is unenforceable under California law, and that California law is not preempted by the Federal Arbitration Act ('FAA')." Dkt. No. 123 at 4-5. RAC has not disagreed with plaintiffs' view that, in light of the circuit's opinion, "the Court need no longer consider RAC's argument that its arbitration provision precludes class certification." Dkt. No. 140 at 2. Consequently, the Court need not take up the arbitration-related arguments in the parties' certification briefs.

Another development is that plaintiffs are "no longer pursuing an individual or a classwide challenge to the $1.99 Expedited Payment Fee." Dkt. No. 140 at 2; Dkt. No. 130 at 2. Plaintiffs had initially challenged the $1.99 expedited payment fee (for payments made by telephone) in addition to the $45.00 processing fee. *See* Compl. ¶¶ 3, 25. Because plaintiffs have withdrawn their challenge to the $1.99 expedited payment fee, the Court need not consider the parties' arguments with respect to it.

The question for resolution here is whether plaintiffs may litigate on a class basis the claim that the $45 processing fee in RAC's Rental Purchase Agreement violates the Karnette Act, Cal.

1    Civil Code § 1812.624(a)(7).[2]  This section prohibits lessors from requiring consumers to pay any
2    fee that is "not reasonable and actually incurred by the lessor." *Id.*

### I. CLASS CERTIFICATION

The standards governing class certification are well established.  The overall goal is "to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (cleaned up).  Plaintiffs must prove by a preponderance of the evidence that their proposed classes satisfy all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 424 (2022).  Here, plaintiffs have elected to proceed under Rule 23(b)(3) only.  Dkt. No. 97.

The Court's class certification analysis "must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim," but the merits questions may be considered to the extent, and only to the extent, that they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 465-66 (internal quotations and citations omitted).  The class certification procedure is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits.  *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015).  The decision of whether to certify a class is entrusted to the sound discretion of the district court.  *Zinser*, 253 F.3d at 1186.

#### A. Numerosity (23(a)(1))

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiffs state with evidentiary support that "tens of thousands of California consumers . . . entered into tens of thousands of RPAs with RAC during the relevant period." Dkt. No. 97 at 12.  RAC does not contest numerosity.  *See* Dkt. No. 105.  This element is satisfied.

---

[2] Both sides treat plaintiffs' CLRA and UCL claims as derivative of the Karnette Act claim and the certification questions as coterminous.  The Court will do the same.

**B.     Typicality (23(a)(3))**

Rule 23(a)(3) requires the named plaintiffs to demonstrate that their claims are typical of the putative class. Fed. R. Civ. P. 23(a)(3). McBurnie and Spruell say typicality is satisfied because their claims, "like the claims of absent class members, arise from RAC's common policies and practices and are based on the same legal arguments." Dkt. No. 97 at 14. It is not disputed that McBurnie and Spruell each signed RPAs which included the $45.00 processing fee at issue in this case.

RAC raises a number of objections to typicality, none of which are well taken. Dkt. No. 105 at 13-15. RAC says that plaintiffs' "own personal RPAs far exceeded the $45 Processing Fee even without RAC's expert's allocation of kiosk labor cost" but does not explain how this might subject plaintiffs to a "unique defense" for purposes of the Karnette Act. *Id*. at 13 (emphasis omitted). RAC's other arguments about McBurnie -- such as that he had a "litany of grievances [against RAC], none of which included the Processing Fee," or that he "received a letter from" one of plaintiffs' counsel here, the contents of which are "unknown" -- are not tethered in any relevant manner to the Rule 23(a) inquiry. RAC fails to connect any of these alleged facts with an actual defense that may be applicable to McBurnie but not to other members of the class. Simply pointing out that McBurnie had some circumstances unique to himself, or speculating about communications he may have had with his lawyers, gets RAC nowhere.

The record demonstrates that the proposed class members are alleged to have had the same injuries which are based on the same rental agreements that all customers of RAC, including the named plaintiffs, signed. This satisfies typicality. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017).

**C.     Adequacy (23(a)(4))**

Under Rule 23(a)(4), the class representatives must be capable of fairly and adequately protecting the interests of the class. Fed. R. Civ. P. 23(a)(4). Plaintiffs say that adequacy is satisfied because they "have the same types of interests and suffered the same types of injury as other class members, and none have conflicts of interest." Dkt. No. 97 at 14. In addition, they say that the proposed class representatives have "provided valuable assistance" in litigating this matter

4

and "committed to putting the interests of the class ahead of his or her own personal interests." *Id*. at 14-15.

RAC again raises spurious arguments in its opposition. It may be that Spruell has brought class action lawsuits against other rent-to-own businesses, but that in itself does not demonstrate she is an inadequate plaintiff in this case. RAC's unduly suspicious speculation that something is awry because Spruell and her sister are said to have undertaken a "parallel retention of Mr. Dostart relating to RPAs entered into on the same day in San Leandro, California," also falls short. Dkt. No. 105 at 17. This suspicion is not tied to any defense that might uniquely apply to Spruell and not the class, or any other potentially disqualifying factor under Rule 23(a). RAC's speculative comments about plaintiffs' counsel, *id*. at 17-19, also fail to show counsel's lack of adequacy. Plaintiffs have established adequacy.

### D. Commonality (23(a)(2)) and Predominance (23(b)(3))

The commonality requirement under Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because "any competently crafted class complaint literally raises common questions," the Court's task is to look for a common contention "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Alcantar*, 800 F.3d at 1052 (internal quotations and citations omitted). What matters is the "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted) (emphasis in original). This does not require total uniformity across a class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. The commonality standard imposed by Rule 23(a)(2) is, however, "rigorous." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

Rule 23(b)(3) sets out the related but still distinct requirement that the common questions of law or fact predominate over the individual ones. This inquiry focuses on whether the

5

"common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotations and citation omitted); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 422, 453 (2016). Each element of a claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 569 U.S. at 34, and the main concern under subsection (b)(3) is "the balance between individual and common issues." *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc) (internal quotations omitted). The Court finds it appropriate to assess commonality and predominance in tandem, with a careful eye toward ensuring that the specific requirements of each are fully satisfied. *See*, *e.g.*, *Just Film*, 847 F.3d at 1120-21.

As noted above, plaintiffs' Karnette Act claim is based on California Civil Code § 1812.624(a)(7). That statutory provision states that: "No rental-purchase agreement or any document that the lessor requests the consumer to sign shall contain any provision by which . . . [t]he consumer is required to pay any fee . . . that is not reasonable and actually incurred by the lessor." The subsection further provides that "[t]he lessor has the burden of proof to establish that a fee was reasonable and was an actual cost incurred by the lessor." Cal. Civ. Code § 1812.624(a)(7).

The parties dispute how "actual cost" should be understood under this statutory language. Plaintiffs contend that under this section of the Karnette Act, "RAC is prohibited from charging its customers any fee it cannot prove is less than or equal to the *incremental* actual cost it incurred *because of* that particular consumer's transaction." Dkt. No. 114 at 1 (emphases in original). RAC, on the other hand, argues that it may charge to the consumer any "actual costs that RAC incurred related to processing an RPA" -- including items such as RAC's labor costs, deprecation for related software, and "iPad cellular service, for the iPads used by kiosk employees to enter into RPAs" -- even if those costs were not incurred specifically because of a particular consumer's

6

transaction. Dkt. No. 105 at 4; *see id*. at 7 ("The plain language of [Karnette Act, Civil Code § 1812.624(a)(7)] means exactly what it says -- any cost of any kind that is actually incurred by the lessor, whether that cost is or is not 'incremental,' and whether or not that cost is or is not paid by RAC to a third-party'" is a permissible "actual cost").

It is neither necessary nor appropriate to resolve this merits question at this stage of the case. What matters for present purposes is that, irrespective of whether the Court ultimately adopts plaintiffs' view of this Karnette Act section or RAC's, the necessary proof will be predominantly common for the proposed class. Plaintiffs will present the "standardized, pre-printed form" RPA which was required of all California consumers and which contained a $45 processing fee. Dkt. No. 97 at 8. Plaintiffs could offer additional classwide proof that the processing fee does not "reflect[] a pass-through of any cost actually incurred by RAC as a result of that particular transaction" and that RAC did not, for example, "contemporaneously track employee time spent processing RPAs." *Id*. at 8-9.

For its part, RAC has pointed to permissible charges as including:

- The labor costs for the Acceptance Now kiosk employees in the stores;
- Depreciation for the software employed to determine whether to enter into an RPA with a potential customer;
- The labor cost to operate the software employed to determine whether to enter into an RPA with a potential customer;
- iPad cellular service, for the iPads used by kiosk employees to enter into RPAs;
- iPad depreciation expense, for the iPads used by kiosk employees to enter into RPAs;
- Other software and application costs, related to work to enter into RPAs;
- The labor costs needed to match the third party retailer inventory with the RPA to ensure that the right items were delivered to the right person;
- Certain indirect store costs; and
- Certain indirect corporate costs.

Dkt. No. 105 at 4.

Tellingly for purposes of Rule 23, RAC's proposed method of calculating and allocating these costs is almost completely common to the proposed class. RAC proposes to calculate the

7

costs on an aggregate basis and then to average the costs for each RPA processed in California. *See*, *e.g.*, *id*.; Dkt. No. 96-2 (Anastasi Rep. at 7-18 & Sched. 1.0). The schedules attached to the report of RAC's expert, Joseph Anastasi, illustrate this point clearly. Schedule 2.0, for example, calculates "Employee Processing of RPAs Cost per RPA" by dividing "Total CA Direct Kiosk Labor Cost" by "Number of CA RPAs." And to calculate a "Customer Interaction Cost" that is supposedly specific to Spruell, all that the expert did was multiply the "Average 2017 Direct Labor Cost/Hour" rate ($16.20) by the 35 minutes Spruell testified she spent on her rental process, divided by 60 minutes. *See* Anastasi Rep., Sched. 1.3.

Even under RAC's proposed view of "actual cost," the only input that is specific to the named plaintiffs and proposed class members is the time that each individual spent in the store on their transaction. *See* Dkt. No. 105 at 9 ("McBurnie testified that he spent between four and five hours in store as the RAC kiosk employee completed his RPA," and "Spruell . . . testified that her in-store process took her only 35 minutes."). This is the only specific variation in fact that RAC points to as defeating predominance. They say that "there is no common evidence regarding the man-hours required for transactions" and "testimony from each class member would be required." *Id*. at 12-13.

A good argument can be made that it is, in fact, RAC's burden under the Karnette Act to keep records of these labor hours by transaction if it wishes to point to them in support of a fee charged to the consumer. *See* Cal. Civil Code § 1812.622(k) ("'Lessor's cost' means the documented actual cost"); *id*. § 1812.644(a) ("A lessor shall maintain records that establish the lessor's cost . . . for each item of personal property that is the subject of the rental-purchase agreement."). But even assuming that these Karnette Act sections don't apply to § 1812.624(a)(7), certification is nevertheless proper where the number of hours that each class member spent in the store is the only fact that might vary from class member to class member, and all other proffered costs are proposed to be calculated on a classwide basis. As discussed, in deciding whether common questions predominate, the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres*, 835 F.3d at 1134. Rule

8

1  23(b)(3) permits certification when "one or more of the central issues in the action are common to
2  the class and can be said to predominate, . . . even though other important matters will have to be
3  tried separately, such as damages or some affirmative defenses peculiar to some individual class
4  members." *Tyson*, 577 U.S. at 453 (internal quotations omitted); *see also Olean*, 31 F.4th at 669
5  ("a district court is not precluded from certifying a class even if plaintiffs may have to prove
6  individualized damages at trial, a conclusion implicitly based on the determination that such
7  individualized issues do not predominate over common ones").

On the record before the Court, the issues that are common to the class predominate over the individual ones, whether the Court adopts plaintiffs' view of "actual cost" under the Karnette Act or RAC's. The same is true of plaintiffs' CLRA and UCL claims, which the parties agree are derivative of the Karnette Act claim. *See* Dkt. No. 97 at 22 ("Plaintiffs' CLRA and UCL claims are derivative of their Karnette Act claim and therefore present the same predominant common questions and should be certified for all the same reasons.").

### E.     Superiority (23(b)(3))

The closing question is whether the ends of justice and efficiency are served by certification. Rule 23(b)(3) requires a finding that proceeding as a class is superior to other ways of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). It is. As plaintiffs say, their "core Karnette Act claim can efficiently be adjudicated using common proof," and "the damages recoverable by any particular class member are relatively small and it would be nearly impossible for most class members to retain counsel and pursue their claims on an individual basis." Dkt. No. 97 at 23. Superiority is not disputed by RAC and that requirement is satisfied.

## CONCLUSION

The Court certifies the following class for plaintiffs' claims under the Karnette Act, Consumer Legal Remedies Act, and UCL:

> All individuals who entered into a Rental-Purchase Agreement with RAC in California at any time between December 11, 2016, and June 30, 2021 and who were charged a Processing Fee.

Plaintiffs Shannon McBurnie and April Spruell are appointed class representatives. Attorneys Zach Dostart of Dostart Hannink LLP and Michael Rubin of Altshuler Berzon LLP are appointed lead class counsel.

Plaintiffs are ordered to submit by June 30, 2025, a proposed plan for dissemination of notice to the class. Plaintiffs will meet and confer with RAC at least 10 days in advance of submitting the plan so that the proposal can be submitted on a joint basis to the fullest extent possible.

For the remaining case schedule, the last day to file dispositive and FRE 702 motions is set for October 9, 2025. A pretrial conference is set for January 15, 2026, at 1:30 p.m. A jury trial is set for January 26, 2026, at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: June 6, 2025

JAMES DONATO
United States District Judge